ELLSWORTH v HOTEL CORPORATION OF AMERICA

Docket No. 203893. Submitted November 18, 1998, at Lansing. Decided June 11, 1999, at 9:15 A.M. Leave to appeal sought.

Elaine Ellsworth brought an action in the Wayne Circuit Court against Hotel Corporation of America, seeking damages for injuries allegedly suffered as a result of a fall caused by an uneven section of sidewalk on the premises of the defendant's Livonia-West Holiday Inn. A jury returned a verdict of no cause of action, and the court, Susan Bieke Neilson, J., following the denial of plaintiff's motion for a new trial based on a claim that the jury's verdict was against the great weight of the evidence, entered a judgment for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff sought to impeach the testimony of the chief engineer of the hotel facility that there had been no repair work done to the sidewalk at the location of plaintiff's fall either before or after the fall with the testimony of the manager of the hotel facility that the sidewalk in question had been replaced as part of an extensive renovation project that was started seven months after the accident in which three thousand feet of sidewalk around the hotel facility had been replaced. The court refused to admit the testimony of the manager relative to the subsequent renovations on the basis that the plaintiff had failed to object to the engineer's testimony and that an objection to the engineer's testimony was a prerequisite to the introduction of the manager's testimony as impeachment.

2. Although there is no support for the trial court's holding that the failure to object to the chief engineer's deposition testimony that there had been no repair work done to the sidewalk at the site of the accident precluded the admission of the manager's testimony concerning the subsequent renovation that included replacement of sidewalk at the site of the accident, the court reached the right result, although for the wrong reason. Because the replacement of the sidewalk was temporally remote from the accident and was done as part of a major renovation project that was unrelated to the plaintiff's injury, the replacement of the sidewalk could not be considered to be a subsequent remedial repair. Accordingly, the

manager's testimony concerning the renovation did impeach the engineer's testimony concerning the absence of repair work and was properly excluded on the basis that it was not relevant evidence.

3. Although defense counsel's reference during closing argument to the now-repudiated two-inch rule that once was applied in negligence actions against municipalities for uneven sidewalks was irrelevant, that reference did not prevent the plaintiff from receiving a fair and impartial trial in view of the absence of any objection to that reference and the fact that defense counsel also indicated to the jury that it was for the jury to decide as a question of fact whether an uneven sidewalk was unreasonably dangerous.

4. Because the defendant's liability, if any, arose out of its common-law duty of care to the plaintiff as a public invitee, any specific duties it might owe to the owner of the hotel facility under its management service contract with the owner were not relevant to a determination of the defendant's negligence in this matter. Accordingly, because the management service contract was not relevant to the issues at bar, the defendant's failure to produce the contract gave rise to no adverse presumptions, and the trial court properly refused the plaintiff's request that the jury be instructed in accordance with SJI2d 6.01.

5. The trial court properly denied the plaintiff's motion for a new trial based on the claim that the jury's verdict was against the great weight of the evidence. Although it was uncontroverted that the sidewalk was uneven at the location of the plaintiff's fall, the jury could have properly found that the unevenness did not present an unreasonable danger on the basis of the testimony of defendant's employees and the jury's own review of photographs of the sidewalk in question.

Affirmed.

EVIDENCE — SUBSEQUENT REMEDIAL MEASURES — OBJECTION TO EVIDENCE — IMPEACHMENT.

A plaintiff need not object to defense testimony that no subsequent measures had been undertaken to make the event that allegedly caused the plaintiff's injury less likely to occur in order to seek to admit as impeachment of that testimony evidence of subsequent remedial measures (MRE 407).

*Patrick, Johnson & King, P.C.* (by *Paul H. Johnson, Jr., Patrick A. King,* and *Thomas T. Bearse*), for the plaintiff.

*O'Connor, DeGrazia & Tamm, P.C.* (by *Julie McCann O'Connor* and *Richard M. O'Connor*), for the defendant.

Before: SAAD, P.J., and KELLY and BANDSTRA, JJ.

SAAD, P.J. Plaintiff filed this premise liability action against defendant, alleging that she was injured as a result of defendant's negligence. A jury returned a verdict of no cause of action, and the trial court dismissed plaintiff's case. Plaintiff now appeals, and we affirm.

### FACTS AND PROCEEDINGS

In October 1994, plaintiff went to the Livonia-West Holiday Inn to attend a miniature show. She says that she fell and injured her hand after she tripped on an uneven portion of sidewalk on the hotel premises. Plaintiff sued on a negligence theory. The case proceeded to trial, and a jury returned a verdict of no cause of action.

### I

Plaintiff's first issue involves the impeachment exception to the bar in MRE 407 on evidence of subsequent remedial measures. Plaintiff claims that the trial court should have allowed her to impeach defendant's witness with evidence that defendant renovated the hotel's sidewalks after plaintiff's fall. We disagree, because the sidewalk renovation was not actually a subsequent remedial measure and would have been irrelevant as impeachment.

Because Kevin McAndrew, the chief engineer of the Livonia-West Holiday Inn, was unavailable to testify at

trial, plaintiff read excerpts from his deposition into the record. After plaintiff completed the reading, defendant read into the record another part of the deposition in which McAndrew was asked whether "the area that you were discussing in particular [i.e., where plaintiff fell] has not had any repair work done either before or after the time we're talking about, October of '94." McAndrew responded "No." Plaintiff later tried to introduce as impeachment the deposition testimony of Steve Carter, the hotel manager, who testified that there had been work on the sidewalks in 1995 and 1996. The trial court excluded this evidence because plaintiff failed to object to McAndrew's testimony. Plaintiff claims this decision was in error.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Szymanski v Brown*, 221 Mich App 423, 435; 562 NW2d 212 (1997). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there is no justification or excuse for the ruling made. *Id.*, 431; *Gore v Rains & Block*, 189 Mich App 729, 737; 473 NW2d 813 (1991). Any error in the admission or exclusion of evidence does not require reversal unless a substantial right of the party is affected. MCR 2.613(A); MRE 103(a); *Chmielewski v Xermac, Inc*, 216 Mich App 707, 710-711; 550 NW2d 797 (1996), aff'd 457 Mich 593; 580 NW2d 817 (1998). "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, all relevant evidence is admissi-

ble, and irrelevant evidence is not admissible. MRE
402; *Szymanski, supra*, 435. Furthermore, MRE 407
provides:

> When, after an event, measures are taken which, if taken
> previously would have made the event less likely to occur,
> evidence of the subsequent measures is not admissible to
> prove negligence or culpable conduct in connection with
> the event. This rule does not require the exclusion of evi-
> dence of subsequent measures when offered for another
> purpose, such as proving ownership, control, or feasibility
> of precautionary measures, if controverted, or
> impeachment.

The purpose of MRE 407 is to encourage, or at least
not to discourage, people from taking steps in further-
ance of added safety. *Palmiter v Monroe Co Bd of
Road Comm'rs*, 149 Mich App 678, 685-686; 387 NW2d
388 (1986).

Plaintiff argues that Carter's testimony should have
been permitted under the impeachment exception of
MRE 407. It is well established that evidence of a
subsequent remedial measure is admissible as
impeachment when the opposing party has denied
making a repair. *Id.*, 690; *Cody v Marcel Electric Co*,
71 Mich App 714, 722-723; 248 NW2d 663 (1976); *Lit-
tle v Borman Food Stores, Inc*, 33 Mich App 609, 611-
614; 190 NW2d 269 (1971). The contradictory evi-
dence may be either direct or circumstantial.
*Palmiter, supra*, 690.

Here, the trial court concluded that plaintiff was
required to object to McAndrew's testimony as a pre-
requisite to introduce evidence to impeach that testi-
mony. We have not found any authority to support
this ruling, nor do we see any ground plaintiff would
have had for objecting. The rule prohibits introduc-

tion of evidence that a repair was made after an accident; it does not bar evidence that no repair was made. Accordingly, we do not believe that objection to this portion of the deposition was a prerequisite to the introduction of impeachment evidence.

However, we will not reverse the decision of a trial court if it reached the right result, albeit for the wrong reason. *Yerkovich v AAA*, 231 Mich App 54, 68; 585 NW2d 318 (1998). Here, plaintiff's evidence of postaccident repairs to the sidewalks should have been excluded because the renovation does not qualify as a subsequent remedial measure. Consequently, it was irrelevant as impeachment of McAndrew's testimony that the hotel made no postaccident repairs. As part of an extensive renovation project, defendant replaced three thousand feet of sidewalk, which necessarily included the area where plaintiff fell. At the earliest, the work began in May 1995, seven months after plaintiff's accident, and continued into 1996. This was not a "subsequent remedial repair" as described in MRE 407. The construction was too remote in time from plaintiff's accident and covered too large a territory to be considered a "repair" to the accident site. Any "repair" to the sidewalk where plaintiff fell was simply incidental to this construction project. There was no evidence to suggest that this large-scale construction project was prompted by or otherwise related to plaintiff's fall. Accordingly, this is not the sort of "repair" that may be used to impeach testimony that no repair was made after the plaintiff's accident.[1] Because this major renovation cannot real-

---

[1] For example, in *Little, supra*, 613-614, testimony that a witness saw rock salt on an entranceway two hours after the plaintiff had fallen on the

istically be considered a repair to the sidewalk where plaintiff was injured, Carter's testimony was not actually in conflict with McAndrew's testimony. Consequently, Carter's testimony did not qualify as relevant impeachment, either direct or circumstantial, and was properly excluded.

II

Plaintiff contends that the cumulative effect of alleged trial errors denied her a fair trial. We disagree.

First, plaintiff argues that her right to a fair trial was violated by the trial court's exclusion of the evidence of repairs to the sidewalk after plaintiff's fall. However, as already discussed, the evidence was properly excluded.

Second, plaintiff asserts that she was prejudiced by defense counsel's reference to the "two-inch rule" during his closing argument. Defense counsel commented that "in the old days a generation ago," the court would find negligence if the sidewalk elevation was two inches or greater and not find negligence if the elevation was less. He explained that the rule was thrown out in favor of allowing jurors to decide the question of negligence based on the particular circumstances.

When reviewing claims of improper conduct by a party's lawyer, this Court must first determine whether the lawyer's action was error and, if so, whether the error requires reversal. *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). A lawyer's comments will usually not be cause for reversal

entranceway was permitted to impeach defense witness testimony that no salt had been applied to the entranceway where the plaintiff had fallen.

unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial or where counsel's remarks were such as to deflect the jury's attention from the issues involved and had a controlling influence on the verdict. *Id.* This issue has not been preserved for review because plaintiff did not object to defense counsel's reference to the "two-inch rule" during his closing argument. *King v Taylor Chrysler-Plymouth, Inc,* 184 Mich App 204, 217; 457 NW2d 42 (1990). However, even if not preserved, this Court will review the issue to determine whether defense counsel's comments " 'may have caused the result or played too large a part and may have denied the party a fair trial.' " *Id.,* quoting *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982).

The "two-inch rule" refers to the now-defunct doctrine that a municipality cannot be held liable for negligence because of a discontinuity of two inches or less in a sidewalk. *Rule v Bay City,* 387 Mich 281, 283; 195 NW2d 849 (1972). Our Supreme Court abolished the "two-inch rule" in 1972. *Id.* In any event, the two-inch rule would have been irrelevant here because defendant is not a municipality. Nonetheless, defense counsel's comments regarding the rule accurately stated the current law. Furthermore, defense counsel explained to the jury the reasons for the abolition of the rule, noting that "two inches in one case might have meant nothing whereas a half inch in another case would have been very significant." Defense counsel went on to explain, correctly, that whether the uneven sidewalk was unreasonably dangerous was a question of fact for the jury to decide.

Under these circumstances, defense counsel's comments were not improper.

III

Plaintiff asserts that the trial court erred in refusing to give SJI2d 6.01 with respect to defendant's failure to produce its management service contract with the owner of the hotel. We review claims of instructional error for an abuse of discretion. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997).

SJI2d 6.01 states that where a party fails to produce evidence under its control, and gives no reasonable excuse for the failure to produce the evidence, a jury may infer that the evidence would have been adverse to that party. SJI2d 6.01 should be given only where (1) the evidence was under the control of the party who failed to produce it and could have been produced by that party, (2) no reasonable excuse for the failure to produce the evidence has been given, and (3) the evidence would have been material, not merely cumulative, and not equally available to the opposite party. See Note on Use of SJI2d 6.01.

Here, the management contract was not material to a determination of defendant's negligence. Because plaintiff was visiting the hotel in response to a public invitation to a show, she was a "public invitee" and entitled to the duty of care an invitor owes to invitees. *Stitt v Holland Abundant Life Fellowship*, 229 Mich App 504, 506-509; 582 NW2d 849 (1998). As an invitor, defendant owed a duty to plaintiff to maintain the premises in a reasonably safe condition and to exercise ordinary care to keep the premises safe. *Anderson v Wiegand*, 223 Mich App 549, 553; 567

NW2d 452 (1997); *Schuster v Sallay*, 181 Mich App 558, 565; 450 NW2d 81 (1989). Any specific duties defendant owed to the hotel owner pursuant to the management contract would not be material to determining defendant's liability to plaintiff for negligence. Therefore, the trial court did not abuse its discretion in refusing to read SJI2d 6.01 to the jury.

IV

Finally, plaintiff argues that the trial court should have granted her motion for a new trial because the jury's verdict of no cause of action was against the great weight of the evidence. We disagree.

When a party claims that a jury's verdict was against the great weight of the evidence, we may overturn that verdict "only when it was manifestly against the clear weight of the evidence." *Watkins v Manchester*, 220 Mich App 337, 340; 559 NW2d 81 (1996). This Court will give substantial deference to a trial court's determination that the verdict is not against the great weight of the evidence. *Id.* The trial court cannot substitute its judgment for that of the factfinder, and the jury's verdict should not be set aside if there is competent evidence to support it. *King, supra*, 210. This Court gives deference to the trial court's unique ability to judge the weight and credibility of the testimony and should not substitute its judgment for that of the jury unless the record reveals a miscarriage of justice. *Heshelman v Lombardi*, 183 Mich App 72, 76; 454 NW2d 603 (1990).

To prove negligence, plaintiff was required to prove (1) that defendant owed a duty to plaintiff, (2) that defendant breached that duty, (3) causation, and (4) damages. *Schultz v Consumers Power Co*, 443 Mich

445, 449; 506 NW2d 175 (1993). Generally, a business invitor owes a duty to its customers to maintain its premises in a reasonably safe condition and to exercise ordinary care and prudence to keep the premises reasonably safe. *Anderson, supra,* 553; *Schuster, supra,* 565. This duty does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee can be expected to discover them himself. *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 500; 418 NW2d 381 (1988).

Plaintiff testified that she fell because her toe hit a raised portion of the sidewalk. Plaintiff presented the testimony of Duane Van Camp and Nancy Van Camp that there was a 1- to 1½-inch height difference between two concrete sections of the sidewalk at the site of plaintiff's fall. In addition, the jury viewed photographs of the sidewalk admitted into evidence by plaintiff. Defendant did not dispute that the sidewalk was uneven and presented no evidence that the height variation was not 1 to 1½ inches. However, defendant presented McAndrew's testimony that he inspected the sidewalks on a weekly basis and had not noticed a dangerous condition at the site of plaintiff's fall at any time before her fall. Furthermore, Carter testified that he did not believe the uneven sidewalk was a hazard and noted that there was no indication in defendant's records that anyone else had ever fallen on the sidewalk.

Whether the uneven sidewalk presented an unreasonable danger was a factual question for the jury to decide. The jury's verdict was supported by competent testimony of defendant's employees that they knew of the height variation and did not believe it to

be a hazard and that there were no reports of anyone else ever having fallen on the sidewalk. Furthermore, the jury viewed photographs of the sidewalk. On the basis of this evidence, we cannot conclude that the trial court abused its discretion in denying plaintiff's motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence.

The jury's verdict is affirmed.